## Scholl et al. v. Allen, Judge.

### Same v. Brown et al.

(Decided March 4, 1931.)

718

WOODWARD, HAMILTON & HOBSON for Scholl and others.

J. VERSER CONNER, BOOTH & CONNER, DAVID R. CASTLE-MAN, and SELLIGMAN, SELLIGMAN & GOLDSMITH for Judge Allen.

TRABUE, DOOLAN, HELM & HELM for Brown and others.

OPINION OF THE COURT BY SPECIAL JUDGE CLARKE— Denying writ of prohibition in first case, and affirming in second case.

These two cases, Luther F. Scholl et al. v. Lafon Allen, Judge, on a petition filed in 'this court for a writ of prohibition, and Luther F. Scholl et al. v. James B. Brown et al., on appeal, were ordered consolidated and heard together. These cases involve the affairs of the BancoKentucky Company and have a connection in certain aspects.

In the action of Scholl et al. v. Allen, Judge, the petitioners, as stockholders of the BancoKentucky Company, invoke the original jurisdiction of this court, created by section 110 of the Constitution of the state of Kentucky, which provides that this court "shall have power to issue such writs as may be necessary to give it a general control of inferior jurisdictions." Petitioners herein seek a writ of prohibition commanding Lafon Allen, Judge of the Jefferson Circuit Court, Chancery Branch, Second Division, to set aside an order entered appointing Joseph S. Laurent receiver of the BancoKentucky Company and prohibiting him from enforcing, attempting to enforce, or taking any steps to enforce the order appointing the receiver and an order of injunction issued by the court therein.

In the action of Scholl et al. v. Brown et al., Luther F. Scholl and others have prosecuted an appeal from the judgment of the Jefferson Circuit Court, Chancery

Branch, Second Division, dismissing their petition, wherein they, on behalf of themselves and all other stock-holders of the BancoKentucky Company and the company itself, sought to recover $25,000,000 as damages, of the appellees, who are the officers and directors of the BancoKentucky Company, the National Bank of Kentucky, and the Louisville Trust Company for their alleged acts of negligence and mismanagement of the affairs of said companies.

The BancoKentucky Company was organized under the laws of the state of Delaware in July, 1929, and by its charter was authorized to buy, hold, sell, and deal in stocks and bonds of other corporations. Its principal and only place of business, all of its assets and records were located in Louisville, Ky., where it transacted and carried on all of its business. All of its directors and officers (excepting a statutory agent in Delaware for the service of process) resided there. Prior to, and on, November 17, 1930, the BancoKentucky Company owned substantially all, or had control of, the capital stock of the Ashland National Bank of Ashland, Ky., Brighton Bank & Trust Company of Cincinnati, Ohio, Pearl & Market Bank & Trust Company of Cincinnati, Ohio, Central Savings Bank & Trust Company of Covington, Ky., People's Liberty Bank & Trust Company of Covington, Ky., Savings Bank & Trust Company of Covington, Ky., First National Bank of Paducah, Ky., Mechanics Trust & Savings Bank of Paducah, Ky., Security Bank of Louisville, Ky., the National Bank of Kentucky and the Louisville Trust Company, both of Louisville, Ky., by units of the trust certificates representing ownership of capital stock in the latter two institutions. It also was the owner of several thousand shares of the capital stock of Caldwell & Company, a banking house of Nashville, Tenn.

## SCHOLL ET AL. v. ALLEN, JUDGE.

The grounds asserted for the writ of prohibition as set out in the petition filed in this court are:

"First, because the petition (filed in the Jefferson Circuit Court) on which said order and judgment were approved and entered by the Court (Judge Allen sitting) stated no cause of action and no reason or fact which would justify the Court in appointing a Receiver;

"Second, the defendant, the BancoKentucky Company, was not before the Court and had no legal notice, or any notice, of the application for or the appointment of said Receiver;

"Third, because Thomas Zurschmiede, Secretary of the said BancoKentucky Company, was wholly without authority to enter its appearance to said action or consent to the appointment of a Receiver for it or on its behalf;

"Fourth, because the defendant, the BancoKentucky Company, in said action was and has been at all times since its incorporation, a corporation incorporated under the laws of Delaware, and the Jefferson Circuit Court, Chancery Branch, Second Division, was without authority or jurisdiction to appoint any Receiver to take charge of its internal affairs or liquidate its assets and make a distribution thereof, and the said Court was without any authority or jurisdiction to appoint a Receiver to maintain or prosecute any action against the officers and directors of said corporation to recover money from said officers and directors for losses and damages sustained by said corporation in the management of said corporation's internal affairs by said officers and directors."

The petition, in the action wherein the receiver was appointed, alleges that plaintiffs were stockholders and directors and, with one other, constituted the executive committee of the board of directors of the BancoKentucky Company; that it was a corporation organized July 16, 1929, under the laws of the state of Delaware. A copy of its articles of incorporation were filed; that all of its property and estate of every kind was located and held in Louisville, Jefferson county, Ky.; that the Banco-Kentucky Company was the owner of large amounts of the capital stock of the above-mentioned banks, in Cincinnati, Ohio; Covington, Ashland, Paducah, and Louisville, Ky.; that the National Bank of Kentucky and the Louisville Trust Company had been compelled to suspend business and had been placed "under the control and in charge of public authority," meaning that they had been put in the hands of receivers.

It alleged that as the result of the closing of the National Bank of Kentucky and the Louisville Trust

Company "grave complications arose which made it impossible to conduct the affairs of The BancoKentucky Company in the manner and for the purposes for which it was organized, and with the further result that the creditors' and stockholders' interest in The BancoKentucky Company were gravely jeopardized, and the conduct of its business in normal fashion became impossible;" that in order to prevent the closing of the two banks in Cincinnati, the two banks in Covington, and the bank in Ashland ("for the purpose of enabling those banks to proceed in the operation of their respective businesses and to protect their depositors from the results of public excitement"), plaintiffs as the executive committee of the board of directors of the BancoKentucky Company disposed of its holdings of stock in these institutions; that the officers and directors of the bank in Paducah "of their own motion and without the consent or approval of the BancoKentucky Company" disposed of all its assets as a going concern to another bank in that city.

It then alleged:

"These plaintiffs, as the representatives of said stockholders, and by virtue of their authority as the Executive Committee of the Board of Directors of said defendant, prosecute this action for the protection and benefit of all of the stockholders and the said creditors of said defendant, in order to bring the management of its affairs hereafter under the supervision of this Court of equity through its receiver to the end that no question may arise as to the authority and propriety involved in any of the important acts that will be necessary to accomplish a liquidation and distribution of the assets of said defendant to its creditors and stockholders."

It concluded with this allegation:

"That the defendant, The BancoKentucky Company, is threatened with a multiplicity of suits to determine the rights to dispose of its assets and in the liquidation of its affairs and in the distribution of the proceeds thereof, all of which will cause unnecessary expense and delay and irreparably injure the value of the interests of said defendants' creditors and stockholders in said liquidation."

The prayer asked the appointment of a receiver to take charge of all of the assets of the BancoKentucky Company, manage and dispose of same under the supervision of the court, an order directing all persons to deliver same to the receiver, and an order enjoining and restraining all persons from instituting or prosecuting any actions or claims against the company except in that action.

The company, by answer verified by its secretary and filed that day, entered its appearance thereto and confessed the allegations of the petition and consented that the prayer be granted. The Chemical Bank & Trust Company, a creditor to the extent of more than $1,000,000, also a defendant, entered its appearance. Upon motion of the plaintiffs, the court, that day, appointed Laurent receiver for the BancoKentucky Company, and he qualified that day as receiver by taking oath and giving bond in the sum of $650,000, with surety approved by the court. The order directed the receiver to take charge of all of the assets, books, papers, and effects of the company, and to hold, manage, and dispose of same under the supervision of the court; the company, its officers, and all other persons were ordered to deliver the same to the receiver and all persons were restrained from instituting or prosecuting any suit against the company except in that action.

The action and authority of the secretary of the BancoKentucky Company in entering the appearance of the company and consenting to the prayer of the petition being questioned, the BancoKentucky Company, by Hugh Fleece, as attorney for it, filed an amended answer, verified by its president. The sufficiency of the original petition and answer to support the appointment of a receiver cannot be successfully attacked in this proceeding, as the filing of the amended answer by the BancoKentucky Company amplifying the grounds originally asserted and extending same was in the nature of a ratification of the proceeding theretofore had in the appointment of the receiver.

This amended answer, after reaffirming all of the allegations in the original answer, set out in more detail the averments of the petition for the appointment of a receiver respecting its incorporation under the laws of Delaware, its transaction of all of its business, and the

location of all of its assets, officers, and directors in
Louisville, Ky.; it detailed its stock ownership in the
various banks and institutions mentioned above, as well
as other assets and obligations; it further set out in
detail the action of its directors and executive committee
in disposing of its holdings in the Cincinnati, Ashland,
Covington, and Paducah banks; that the situation in
those cities approached a near panic, with runs and
demands being made on those financial institutions for
the withdrawal of deposits in large numbers and
amounts; that an excited condition existed in the public
mind in those cities; and that this action was taken at the
request of the officers of those banks to relieve the dis-
tress and quiet the fears and panic of the depositors and
public; it further alleged the necessity of relieving the
distressing situation and panicky fears of the public gen-
erally, throughout Louisville, and Kentucky, and adjoin-
ing states, brought about by the closing of the Louisville
banks; the responsibility felt by its officers, directors,
and executive committee in connection with these situa-
tions; that the extraordinary situation existing rendered
it utterly impossible for the company to further prose-
cute or promote the purposes and objects for which it
was organized; that it was being threatened with various
suits against it; that an attachment suit had been insti-
tuted by one of its creditors at Cincinnati, Ohio, seeking
to obtain a preference in the distribution of its assets;
that a suit had been instituted at Paducah, Ky., by cer-
tain stockholders seeking to gain advantage over other
stockholders; that the proceeds from the sale of its hold-
ings in the banks at Covington, Ashland, and Cincinnati
had been taken into custody by Paul C. Keyes, receiver
of the National Bank of Kentucky, claiming a prior right
thereto; that these extraordinary circumstances and con-
ditions existed at the time the petition was filed against
it, and that the board of directors of the defendant com-
pany since the closing of the Louisville banks had been
greatly embarrassed and harassed in the performance of
their duties by persistent rumors and threats of action
against them for alleged damages occasioned by their
manner of controlling the affairs of the corporation; that
one suit of that nature had been instituted against them
in the Jefferson Circuit Court.

As we view the record, it is not necessary to discuss the question raised as to the sufficiency of the original petition and original answer to warrant the appointment of the receiver, or the regularity of the proceeding had in making the appointment. The subsequent allegations in the amended answer, however, cured the inadequacy, if any there was, in the original pleadings. The record as a whole undoubtedly justified the appointment of the receiver.

It is urged by counsel for Laurent, the receiver, in support of the order appointing the receiver, that the court has the right to search the entire record, and if facts subsequently disclosed demonstrate the propriety of the appointment, this court will not require the appointing court to set aside the order first made and then to reappoint a receiver on a showing subsequently made. In the case of Wakenva Coal Co., Inc., et al. v. Johnson et al., 234 Ky. 558, 28 S. W. (2d) 737, 741, an order appointing a receiver "was entered on July 26, after court hours, when no court was actually held, and without notice to the defendants in any way." On a subsequent hearing in September it developed that sufficient facts existed and could have been shown in June to justify the appointment. This court thereupon held that the lower court should not be directed to set aside its order, saying:

"At the next term of the court, on the second Monday in September, the defendant moved to set aside these orders, and the case was then fully heard by the court. The facts then shown to the court warranted the appointment of a receiver, and reasonably showed danger that the property might be removed or lost. The facts were undisputed, and were the same in July and August as in September. It would have been idle then for the circuit court to have set aside his previous orders and at the same time made orders appointing the receiver again. Nothing would have been gained by this circumlocution, and no substantial injustice was done by the order of the circuit court continuing the receiver. The rule is well settled that on appeal the judgment will only be reversed when prejudicial to the substantial rights of the party complaining."

Further complaint, however, is made of the sufficiency of the petition, that the main and only relief

thereby sought was the appointment of a receiver; and that receivership is never justified as an independent remedy, but only as ancillary to other relief. The general rule is that the remedy of receivership is purely ancillary, being a proceeding in rem. This general rule, however, is not without exception, and the court may appoint a receiver under certain conditions and circumstances as an independent remedy and of course as the main object of the suit. Fleming v. Virginia Mining Co., 196 Ky. 38, 244 S. W. 295; Lively v. Picton, 218 F. 401 (C. C. A. 6th). Where the purposes for which a corporation was organized have become impossible of accomplishment, or where it is necessary to preserve assets from loss through mismanagement of its officers or otherwise, a receiver may be appointed to administer its assets for the benefit of its creditors or its stockholders, as the case may be. Weisert v. Kraft, 209 Ky. 741, 273 S. W. 462; Manufacturers' Land & Improvement Co. v. Cleary, 121 Ky. 403, 89 S. W. 248, 28 Ky. Law Rep. 359; Metropolitan Fire Insurance Co. v. Middendorf, 171 Ky. 771, 188 S. W. 790; Clark on Receivers, sec. 747.

Petitioners further contend that the chancellor lacked authority and jurisdiction to appoint any receiver for the BancoKentucky Company, a Delaware corporation, to take charge of its internal affairs, or liquidate its assets and make a distribution thereof. The BancoKentucky Company, however, consented to the appointment of the receiver by the Jefferson circuit court; its assets, records, directors, and officers (except a statutory agent in Delaware) were located in Jefferson county, Ky.; all business it ever had was transacted in Jefferson County, Ky.

The action of the court appointing a receiver for the BancoKentucky Company, a Delaware corporation, under the conditions described by the record is supported by ample authority.

"Where a corporation has had its principal place of business and most of its property in a jurisdiction other than that in which it was created a receivership created in the former jurisdiction, with the consent of the corporation, may be treated as the primary receivership, for the purpose of winding up its affairs, and all others may be regarded as ancillary. In such a case it may be considered that the fact that the proceeding was not begun in the domiciliary jurisdiction was a defense

that the corporation could and did waive. The assumption by a court of jurisdictional authority over all of the assets, tangible and intangible, of a foreign corporation, within the jurisdiction of the court, coupled with an actual possession, through its receiver of all of the tangible assets within such jurisdiction, and so far as appears, all such assets existing anywhere, carries, with it the right to control an intangible right of action of the company for a diversion of a trust fund, and excludes the right of a receiver subsequently appointed in the state of incorporation to maintain a suit in the same cause of action.'' Tardy's Smith on Receivers, vol. 1, p. 819, sec. 330.

"If a corporation has all of its property at the forum and does all its business there it would seem that a court of equity might well appoint a receiver to wind up its business affairs." 23 R. C. L. 34.

Some authorities hold that courts have no jurisdiction to interfere with the internal affairs of a foreign corporation. In the light of many well-considered decisions, however, this is not a question of jurisdiction, but rather of the advisability of exercising jurisdiction. Cunliffe v. Consumers' Association of America, 280 Pa. 263, 124 A. 501, 32 A. L. R. 1348.

The danger of fraud is increased and genuine hardship inflicted when the parties are left to seek a remedy in a distant state where the corporation has but a technical existence and the individuals concerned have neither domicile nor property. The considerations should be that of "convenience or of efficiency," and where no one essential to the litigation is absent, jurisdiction should not be avoided.

The vague principle that courts will not interfere with the internal affairs of a corporation whose foreignness is at best a metaphysical concept must fall before the practical necessities of the modern business world.

This is not an action to dissolve the corporation, and the right of a court in this state to dissolve a foreign corporation is not involved in this case. But, liquidation of the business of a foreign corporation, having all of the physical manifestations in the state, is, in fact, something quite distinct from a dissolution of the corporation. "Moreover, the appointment of ancillary receivers to liquidate the local business when receivers have been

appointed in the state of incorporation is clear evidence that jurisdiction to liquidate is independent of the power to dissolve." Discussion in Harvard Law Review, January, 1931. There can be no doubt but this court would have jurisdiction of such ancillary proceedings. In such circumstances, should the complainants be driven to seeking relief in Delaware, when it would be a mere matter of form precedent to the asking of the court of the identical relief sought. "Convenience and efficiency" and better reason support the authorities sustaining the right of the forum to liquidate the affairs of a foreign corporation, where all of the physical manifestations of the foreign corporation are located within its jurisdiction and no one essential to the litigation is absent.

Petitioners argue the proposition as though it were one of jurisdiction. The question, however, on close analysis will be seen to be not one of jurisdiction, but one of discretion in exercising jurisdiction. We must conclude that the court properly exercised its discretion in taking jurisdiction to appoint the receiver herein. Burnrite Coal Briquette Co. v. Riggs, 274 U. S. 208, 47 S. Ct. 578, 71 L. Ed. 1002; Central Trust Co. of New York v. William McGeorge, Jr., 151 U. S. 128, 14 S. Ct. 286, 38 L. Ed. 98; Lively v. Picton, 218 F. 401 (C. C. A. 6th); Scattergood et al. v. American Pipe & Construction Co. (C. C. A.) 249 F. 23; Bacus v. Finkelstein (D. C.) 23 F. (2d) 357; Starr v. Bankers' Union of the World, 81 Neb. 377, 116 N. W. 61, 129 Am. St. Rep. 684; Kentucky Racing & Breeding Association v. Galbreaith, 117 Ky. 66, 77 S. W. 371, 25 Ky. Law Rep. 1212; Lewis v. American Naval Stores Co. (C. C.) 119 F. 391.

It appears from the record that the complaining petitioners herein tendered an intervening petition and special demurrer to the petition in the receivership proceeding below but withdrew same without giving the court (Allen, Judge, sitting) any opportunity of considering the complaints which are now alleged for the first time in this court as a basis for the writ of prohibition against the judge thereof. Having failed or declined to avail themselves of an opportunity in the trial court to question the validity or regularity of the proceeding had therein, or the adequacy of the grounds for the order appointing the receiver, or the qualifications of the receiver, petitioners ought not now to be heard in respect to such complaints asserted for the first time in this proceeding for a writ of prohibition against the judge.

It follows therefore that the order appointing the receiver for the BancoKentucky Company was not void, and while the question of whether it was erroneous is not before us, an examination of the record does not indicate that it was.

### SCHOLL ET AL. v. BROWN ET AL., ON APPEAL.

The appellants, as plaintiffs in the lower court, in their petition charge the defendants with neglect of duties devolving upon them as directors or officers in three separate corporations, namely, the National Bank of Kentucky, a national bank, the Louisville Trust Company, a Kentucky corporation, and the BancoKentucky Company, a Delaware corporation.

The petition charges that defendants, acting in various capacities, some as officers and some as directors of one or more of the three corporations named, committed wrongful or negligent acts causing loss or injury to the three corporations respectively, with resulting liability on the part of the defendants as such officers or directors respectively.

This is an appeal from a judgment sustaining defendants' special demurrer to plaintiffs' petition as amended, because of defect of parties and dismissing the petition without prejudice, upon plaintiffs declining to bring in the necessary parties.

The plaintiffs attempt to allege on behalf of the three corporations, such causes of action as may have accrued to each of them against its directors or officers.

The petition alleges that all three corporations are in the hands of receivers, but the petition does not allege that any demand has ever been made by the plaintiffs upon the corporation or upon the receiver to bring any action against the directors.

The plaintiffs do not make parties to their petition, either as plaintiffs or defendants, any one of the corporations or their receivers.

Plaintiffs in this case filed a supplementary amended petition claiming, by way of collateral attack, that the order (subject of attack herein in Scholl v. Allen, Judge) appointing Joseph S. Laurent, receiver of the BancoKentucky Company, in the case of Carroll et al. v. Chemical Bank & Trust Company and the BancoKentucky Company, was void.

In Mitchell Machine & Electric Co. v. Sabin, etc., 218 Ky. 289, 291 S. W. 381, 382, this court held:

"It is elementary law that, where the court has jurisdiction of the subject-matter and the parties to the action, its orders and decrees in the suit are not subject to collateral attack. Hence, if the court appointing a receiver of a corporation has jurisdiction of the subject-matter and the parties, the order appointing him cannot be questioned collaterally, no matter how erroneous it may be."

For the purpose of this suit on appeal we are compelled to treat the appointment of Laurent as the receiver of the BancoKentucky Company as a valid order of appointment, but if the matter could be collaterally considered we would be constrained by the record to hold it a valid appointment, both as a matter of law and fact, for reasons stated supra, in Scholl v. Allen, Judge.

The right to maintain a suit against the directors or officers of a corporation for fraudulent acts or neglect of duties resulting in damage to the corporation is a right of the corporation, and it is only when the corporation will not bring the suit that it can be brought by one or more stockholders in behalf of all.

The suit, when brought by stockholders, is still a suit to enforce a right of the corporation and to recover a sum of money due to the corporation; and the corporation is a necessary party, in order that it may be bound by the judgment.

If a corporation suffers a condition which results in the appointment of a receiver of all of its assets, the right to enforce the rights of the corporation in respect to such causes of action as is described herein, vests in the receiver, and he is the proper party to bring the suit. A demand upon the receiver and a refusal by him to sue are prerequisites to the right of stockholders to maintain such an action, and then the receiver should properly be made a defendant to any suit by stockholders to enforce the right of the corporation. This doctrine seems to be uniformly recognized and applied. Jones, Assignee, v. Johnson, 10 Bush, 649; Rural Credit Subscribers' Ass'n et al. v. Jett et al., 205 Ky. 604-611, 266 S. W. 240; Blake Coal Mining Co. v. Johnson, 196 Ky. 125, 244 S. W. 414; McCallister's Adm'r v. Savings Bank, 80 Ky. 684; Porter v. Sabin, 149 U. S. 473, 13 S. Ct. 1008, 37 L.

Ed. 815; Klein et al. v. Peter et al., (C. C. A.) 284 F. 797, 29 A. L. R. 1497; Kelly v. Dolan (C. C. A. 3) 233 F. 635; Klein v. Peter (C. C. A. 9) 286 F. 362; DuPont v. Standard Arms Co., 9 Del. Ch. 324, 82 A. 692; Marcovich v. O'Brien (1916) 63 Ind. App. 101, 114 N. E. 100; Voorhees v. Indianapolis Car & Mfg. Co., 140 Ind. 220, 39 N. E. 738; McTamany v. Day, 23 Idaho, 95, 128 P. 563; Coble v. Beall, 130 N. C. 533, 41 S. E. 793; Cunningham v. Wechselberg, 105 Wis. 359, 81 N. W. 414; Cook on Corporations (7th Ed.) vol. 3, sec. 701; Clark on Receivers, sec. 790; Fletcher on Corporations, secs. 2686 and 5284.

The court did not err, therefore, in sustaining the special demurrer to the petition as amended because of defect of parties, and therefore the judgment entered thereon dismissing the petition as amended without prejudice is affirmed.

For reasons stated in Scholl et al. v. Allen, Judge, supra, it is ordered that the demurrer to the response of Allen, Judge, be and the same is hereby overruled, the response is adjudged sufficient, and the motion for the writ of prohibition overruled, and the petition dismissed.

Whole court sitting.

Special Judges WM. F. CLARKE, JR., WM. L. WALLACE, and JOSEPH B. SNYDER sitting for Judges DIETZMAN, CLAY, and WILLIS, who were disqualified by reason of interest or kinship.